# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LISA McKNIGHT and JANEIL THOMPSON, | ) ) ) |
| Plaintiffs, | ) 8:04CV642 ) ) |
| vs. | ) ) |
| BRENTWOOD DENTAL GROUP, INC., a Nebraska Corporation, and Dr. MICHAEL OBENG, in his individual capacity, | ) MEMORANDUM AND ORDER ) ) ) ) ) |
| Defendants. | ) ) |

This matter is before the court on defendants Brentwood Dental Group, Inc. and Dr. Michael Obeng's (collectively, "defendants") motion for summary judgment as well as plaintiffs Lisa McKnight and Janeil Thompson's (collectively, "plaintiffs") motion for partial summary judgment and motion in limine. Filing Nos. 74, 80, 101. This case concerns the alleged retaliatory termination and loss of wages and other damages as it relates to defendants purported violations of ERISA.[1] Jurisdiction is proper under 28 U.S.C. § 1331, providing this court original jurisdiction over all civil actions arising under the Constitution and laws of the United States, and 29 U.S.C. § 1132(e), permitting this court jurisdiction in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found.

## Background

Brentwood Dental Group, Inc. ("Brentwood Dental"), a Nebraska corporation licensed to do business in the state of Nebraska, at one time included three dental offices

---

[1] Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*

located in La Vista, Bellevue, and Omaha, as well as an emergency dental clinic located in Omaha. Filing Nos. 21, 75; Filing No. 81, Attachment 2, Obeng Dep. 17:5-24. Dr. Michael Obeng ("Obeng") served as President and Director of Brentwood Dental. Filing No. 21. Brentwood Dental employed plaintiffs Lisa McKnight ("McKnight") and Janeil Thompson ("Thompson"). *Id.* Brentwood Dental provided its employees with a benefit plan defined under ERISA as in the form of a Simple IRA ("the Plan"). *Id.* McKnight and Thompson both participated in the Plan, and Obeng served as fiduciary of the Plan. *Id.*

In January 2003, McKnight questioned Obeng about a $1,400.00 discrepancy between her paycheck deductions for the Plan and the amount appearing in her Plan account. *Id.* After McKnight complained about the missing funds, Dr. Obeng gave McKnight a check for $1,000.00 payable to the Plan. *Id.* At a staff meeting held on March 4, 2004, plaintiffs questioned Melissa Larson ("Larson"), practice administrator for Brentwood Dental, about discrepancies between their wage withholdings and deposits in their IRA accounts. Filing No. 21; Filing No. 76, Attachment 3, Larson Dep. 8:8-10. Obeng was not present at the meeting and McKnight allegedly questioned the legality of defendants' actions. Filing No. 21; Filing No. 76, Attachment 3, Larson Dep. 16:13-15. Larson later informed Obeng that plaintiffs were upset about how the IRA and other benefits were being handled. Filing No. 76, Attachment 3, Larson Dep. 19:16-25.

On March 11, 2003, with Larson present, Obeng met with plaintiffs and expressed concern about the way plaintiffs handled their issues and felt that plaintiffs' attitudes affected the staff. Filing No. 76, Attachment 3, Larson Dep. 24:6-13, 25:10-17. Obeng stated the plaintiffs were ungrateful and unhappy and he could not maintain plaintiffs' employment if they continued to disparage office policies and benefits. Filing No. 76,

2

Attachment 5, ¶ 37. The following day, Obeng met with McKnight and Thompson separately, terminated McKnight, and accepted Thompson's resignation in lieu of termination. *Id.*, ¶ 39; Filing No. 21.

McKnight reportedly contacted the Nebraska Department of Health and Human Services Licensing Division ("NDHHS") and filed an anonymous report regarding Obeng's alleged failure to advise a patient of treatment information. Filing No. 76, Attachment 5, ¶ 43. The NDHHS terminated its investigation after it allegedly determined the patient had been fully advised of the treatment information. *Id.*

Beginning in April 2003, Thompson allegedly contacted the U.S. Department of Labor ("DOL") and the DOL initiated an investigation of Brentwood Dental. Filing No. 75. In August 2003, a DOL investigator reportedly contacted Obeng regarding Brentwood Dental's Simple IRA plan and arrange an on-site examination. Filing No. 76, Attachment 5, ¶ 45; Filing No. 89, Attachment 5. The DOL concluded that Brentwood Dental violated its fiduciary obligations to the plan and several provisions of ERISA by failing to forward employee contributions for investment in a timely manner. Filing No. 87, Attachment 3. Defendants maintain that on September 12, 2003, defendants made additional deposits to Thompson and McKnight's IRA accounts, and that all deposits due and owing for employee withholding and employer contributions have been made. Filing No. 75. The DOL determined that corrective action had been taken when defendants made additional deposits to the Plan and further action by the DOL was not warranted. Filing No. 87, Attachment 3. Defendants thereafter terminated the Plan. Filing No. 76, Attachment 5, ¶ 46.

3

In November 2003, McKnight filed a charge of discrimination with the Nebraska Equal Opportunity Commission ("NEOC") and EEOC. Filing No. 76, Attachment 25. Thompson also filed a charge of discrimination in December 2003. Filing No. 76, Attachment 26. As to both plaintiffs' claims, the NEOC determined a sufficient nexus existed between plaintiffs' complaints of missing IRA funds and subsequent termination. Filing No. 87, Attachments 1 & 2.

Plaintiffs brought this lawsuit maintaining defendants failed to timely deposit wage withholdings in the Plan. Specifically, plaintiffs alleged three causes of action: interference with protected rights in violation of 29 U.S.C. § 1140 (Claim I); breach of fiduciary duty violative of 29 U.S.C. § 1109 (Claim II); and whistle-blower retaliation under the Nebraska Fair Employment Practices Act, Neb. Rev. Stat. § 48-1114 (Claim III). Filing No. 1. The court previously granted defendants' motions for partial dismissal and to strike jury demand (Filing Nos. 8, 9), and permitted plaintiffs to amend their complaint to include their whistle-blower retaliation claim under 29 U.S.C. § 1140. Filing No. 20. Thereafter, plaintiffs amended their third cause of action, whistle-blower retaliation in violation of 29 U.S.C. § 1140 (Claim III). Filing No. 21.

Plaintiffs then filed a second amended complaint pursuant to the court's grant of their motion to do so. Filing Nos. 33, 32, 31. In their second amended complaint, plaintiffs included two additional claims: wrongful termination of participation in the Plan in violation of 29 U.S.C. § 1140 (Claim IV), and improper administration of the plan (Count V). Filing No. 33. Plaintiffs request that this court award back pay as equitable damages; front pay in lieu of reinstatement; unpaid damages; compensatory damages; reinstatement as participants to the Plan; attorney fees; prejudgment interest; any other appropriate relief

4

as the court deems just and proper; and require that Obeng restore to the Plan any profits made from his use of Plan assets. *Id.*

### Legal Standards

#### A.     Summary Judgment

The summary judgment rule is designed to isolate and dispose of factually unsupported claims or defenses. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997). A motion for summary judgment is granted when the court determines there is no genuine issue of material fact, and the undisputed facts warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(c); *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995). The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In ruling on a motion for summary judgment, a court views all facts in the light most favorable to the nonmoving party and gives the nonmoving party the benefit of all reasonable inferences. *Prudential*, 121 F.3d at 366. If the defendant does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence. *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v. Doughboy Recreational Inc.*, 825 F.2d 167, 174 (8th Cir. 1987).

A court must not weigh evidence or make credibility determinations, but must focus on whether a genuine issue of material fact exists for trial. *Kenney v. Swift Transp. Co.*, 347 F.3d 1041, 1044 (8th Cir. 2003); *see Roberts v. Browning*, 610 F.2d 528, 531 (8th Cir. 1979); *see also United States v. Porter*, 581 F.2d 698, 703 (8th Cir. 1978). A material fact

is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court should deny summary judgment where the evidence supports conflicting conclusions. *Kells v. Sinclair Buick-GMC Corp. Truck, Inc.*, 210 F.3d 827, 830 (8th Cir. 2000); *Johnson v. Minnesota Historical Soc.*, 931 F.2d 1239, 1244 (8th Cir. 1991). A court further determines materiality of a disputed fact from the substantive law governing the claim. *Anderson*, 477 U.S. at 248. "Disputes over facts that might affect the outcome of the lawsuit according to applicable substantive law are material." *Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir. 1998).

Once a defendant meets its initial burden of showing there is no genuine issue of material fact, the plaintiff may not rest upon the allegations of his or her pleadings; rather, the plaintiff must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *See* Fed. R. Civ. P. 56(e); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998). In order to survive summary judgment, the nonmoving party must make a sufficient showing concerning every essential element of the case on which the nonmoving party bears the burden of proof. *Osborn v. E.F. Hutton & Co.*, 853 F.2d 616, 618 (8th Cir. 1988); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In the context of a discrimination case, the controlling issue at the summary judgment stage is whether a genuine issue of fact exists regarding any discriminatory motive. *Strate v. Midwest Bankcentre, Inc.*, 398 F.3d 1011, 1017 (8th Cir. 2005). A plaintiff that is unable to directly disprove the defendant's proffered reason for the adverse

employment action may still establish a genuine issue of material fact exists. *Id.* at 1017-18.

### B.    ERISA

"Congress enacted ERISA to protect the interests of participants in employee benefit plans and their beneficiaries by setting out substantive regulatory requirements for employee benefit plans and to provide for appropriate remedies, sanctions, and ready access to the Federal courts." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (*quoting* 29 U.S.C. § 1001(b)) (quotations and ellipses omitted). ERISA is designed primarily to "provide a uniform regulatory regime over employee benefit plans," and courts have been "especially 'reluctant to tamper with the enforcement scheme' embodied in the statute by extending remedies not specifically authorized by its text." *Id.*; *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) (*quoting Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985)) (brackets omitted).

Plaintiffs' claims I, III, and IV are brought pursuant to ERISA § 510 (29 U.S.C. § 1140 (2006)); claim II is brought under ERISA § 409 (29 U.S.C. § 1109 (2006)); and claim V is brought pursuant to ERISA § 502 (29 U.S.C. § 1132 (2006)).

#### 1.    ERISA § 510 (29 U.S.C. § 1140)

Section 510 makes it unlawful for an employer to discharge an employee for exercising any right to which the employee is entitled under the provisions of an employee benefit plan or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan. 29 U.S.C. § 1140; *Eckelkamp v. Beste*, 315 F.3d 863, 871 (8th Cir. 2002). "Section 510 was designed primarily to prevent 'unscrupulous employers from discharging or harassing their employees in order to keep

7

them from obtaining vested pension rights.'" *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1111 (2d Cir. 1988) (*quoting West v. Butler*, 621 F.2d 240, 245 (6th Cir. 1980)).

To establish a prima facie case under ERISA § 510 and avoid summary judgment, the nonmoving party must prove "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." *Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1043 (6th Cir. 1992); *Gavalik v. Cont'l Can Co.*, 812 F.2d 834, 852 (3d Cir. 1987). The plaintiff must demonstrate that the employer acted with the specific intent to interfere with employee's pension rights as prohibited by § 510. *Abbott v. Pipefitters Local Union No. 522 Hosp., Medical, & Life Benefit Plan*, 94 F.3d 236, 242 (6th Cir. 1996); *Dister*, 859 F.2d at 1111; *Conkwright v. Westinghouse Electric Corp.*, 933 F.2d 231, 239 (4th Cir. 1991). However, the plaintiff need not prove that the employer discharged employee with the sole purpose of interfering with employee's pension benefits; rather, it must be a motivating factor. *Shahid v. Ford Motor Co.*, 76 F.3d 1404, 1411 (6th Cir. 1996) (*citing Humphreys*, 966 F.2d at 1043). A litigant will not succeed on an ERISA cause of action "where the loss of benefits was a mere consequence of, but not a motivating factor behind, a termination of employment." *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 37 (1st Cir. 1995); *Koons v. Aventis Pharms., Inc.*, 367 F.3d 768, 777 (8th Cir. 2004).

Section 510 recognizes wrongful discharge claims for "retaliation" for exercise of ERISA plan rights, and "interference" with future ERISA plan benefits. *Kinkead v. Southwestern Bell Tel. Co.*, 49 F.3d 454, 456-57 (8th Cir. 1995). A plaintiff establishes a prima facie case of retaliation under § 510 of ERISA, by proving the existence of a causal connection between participation in a statutorily protected activity and an adverse

employment action. *Id*. at 456. To establish a prima facie case of deliberate interference with prospective benefits under § 510, a claimant must demonstrate a causal connection between the likelihood of future benefits and an adverse employment action. *Id*. at 457.

Courts employ the *McDonnell Douglas*[2] burden-shifting framework to evaluate claims brought under § 510. *Curby v. Solutia, Inc.*, 351 F.3d 868, 871 (8th Cir. 2003); *Eckelkamp*, 315 F.3d at 871; *Kinkead*, 49 F.3d at 456. The first part of the *McDonnell Douglas* analysis requires that the complainant bear the burden of establishing a prima facie case of retaliation. *Rath v. Selection Research, Inc.*, 978 F.2d 1087, 1089 (8th Cir. 1992); *see McDonnell Douglas*, 411 U.S. at 802. The burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's termination. *Id*. If the employer carries this burden of production, the burden then shifts back to the plaintiff to rebut the defendant's explanation by showing the proffered reason is actually pretext for unlawful discrimination. *Rath*, 978 F.2d at 1089-90; *Kinkead*, 49 F.3d at 456.

## 2.     ERISA § 409 (29 U.S.C. § 1109) & ERISA § 502 (29 U.S.C. § 1132)

Section 409(a) imposes personal liability on plan fiduciaries who breach any of the fiduciary responsibilities, obligations, or duties imposed by ERISA "to make good to such plan any losses to the plan resulting from each such breach." 29 U.S.C. § 1109 (2006). Section 502(a)(2), the enforcement provision for § 409, authorizes a participant or beneficiary to seek relief against a plan fiduciary for losses to the plan caused by a breach of fiduciary duty owed to the plan. *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

9

n.9 (1985). Losses recovered under § 409 are paid to the plan as a whole, rather than to an individual beneficiary. *Id.* at 140.

A plan fiduciary is responsible for serving "the interest of participants and beneficiaries and, specifically, to provide them with the benefits authorized by the plan." *Id.* at 142 (1985). Plan fiduciaries must adhere to statutory duties related to "proper management, administration, and investment of fund assets, the maintenance of proper records, the disclosure of specified information," as well as avoidance of conflicts of interest and the duties of loyalty and care. *Id.* at 142-43, 143 n.10. Therefore, the threshold question in every case alleging breach of ERISA fiduciary duties is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest; rather, the appropriate question is whether that person was acting as a fiduciary when committing the alleged acts set forth in the complaint. *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

**Analysis**

**Claims I, III, & IV**

Defendants request that this court grant summary judgment on the following issues: whether plaintiffs' termination of employment was wrongful and/or actionable; whether plaintiffs' termination constituted retaliation and whether such termination is actionable; and whether plaintiffs' termination constituted wrongful termination of plaintiffs' participation in the Plan and whether such termination is actionable. Filing No. 74. In their motion for partial summary judgment, plaintiffs request that this court find as a matter of law that plaintiffs have established a prima facie case of retaliation for asserting their ERISA rights, and that plaintiffs have established a prima facie case of wrongful interference with their participation in the Plan. Filing No. 80. In plaintiffs' reply brief supporting plaintiffs' motion

for partial summary judgment, plaintiffs concede a genuine issue of material fact exists as to plaintiffs' retaliation and interference claims (Claims I, III, IV). Filing No. 95. Plaintiffs now argue that summary judgment should not be granted for either party as to these claims. *Id*.

In support of defendants' motion for summary judgment, defendants argue the ultimate inquiry in an ERISA § 510 claim is whether the employment action was taken with the intent of interfering with the employee's ERISA benefits. Filing No. 75. Defendants argue that plaintiffs cannot establish a prima facie case for their ERISA § 510 claims, as plaintiffs have not advanced any direct evidence of discrimination. *Id*. According to defendants, Larson's deposition testimony supports the conclusion that the IRA issues were not a motivating factor behind defendants' decision to terminate plaintiffs. Filing No. 96. Defendants further contend the record does not support an inference that defendants acted with the specific intent to interfere with plaintiffs' ERISA rights when defendants terminated plaintiffs. Filing Nos. 75, 88.

Defendants argue that plaintiffs' statements and questions about defendants' untimely IRA deposits do not amount to a protected activity under ERISA. Filing No. 88. Further, defendants maintain the evidence that plaintiffs complained about IRA discrepancies at the employee meeting is one-sided and self-serving. Filing No. 96. Defendants contend plaintiffs have not proved a prima facie ERISA retaliation claim, as no causal connection exists between plaintiffs alleged complaints about defendants' handling of the IRA accounts and plaintiffs' termination. Filing Nos. 88, 75. In response, plaintiffs contend that they engaged in protected activity by questioning defendants' IRA procedures,

11

and a temporal link exists between this protected activity and their termination because a short time elapsed between the two events. Filing No. 84.

Viewing the facts in the light most favorable to the nonmoving party, the court finds that a genuine issue of material fact exists concerning plaintiffs' claims under § 510. First, the parties dispute whether plaintiffs engaged in a statutorily protected activity. The parties agree that the Eighth Circuit is not clear on whether an internal complaint constitutes protected activity.[3] However, the parties disagree and the evidence supports conflicting conclusions over whether plaintiffs even raised concerns about their IRA accounts at the staff meeting. Furthermore, the parties dispute whether Obeng knew of plaintiffs' alleged complaints about the untimely IRA deposits before terminating plaintiffs' employment. Filing No. 88. Therefore, whether a causal connection exists between the alleged protected activity and the adverse employment action remains a factual dispute for trial. Accordingly, the court finds plaintiff has established a prima facie case of retaliation for purposes of summary judgment.

Plaintiffs have also established a prima facie case with regard to their claims of interference. The parties disagree over whether defendants intended to interfere with plaintiffs' ERISA rights and whether such a desire was a motivating factor behind plaintiffs' termination. The materials presented in support of and in opposition to the motion for

---

[3] *See Rath v. Selection Research, Inc.*, 978 F.2d 1087, 1089 (8th Cir. 1992) (the court determined that it need not consider the question whether employee's informal opposition to an allegedly illegal plan change is protected activity under § 510, "which is apparently a question of first impression"). *Compare Gagnon v. Sprint Corp.*, 284 F.3d 839, 853 (8th Cir. 2002) (internal complaints suffice as protected activity under the Uniformed Service Employment and Reemployment Rights Act); *Schuhardt v. Wash. Univ.*, 390 F.3d 563, 569 (8th Cir. 2004) (employee's statement to employer about fraudulent and illegal billing practices constituted protected activity under the False Claims Act). The Second Circuit has held that internal complaints are protected under § 510. *See Nicolaou v. Horizon Media, Inc.*, 402 F.3d 325, 328-329 (2d Cir. 2005). The Fourth Circuit concluded internal complaints are not protected. *See King v. Marriott Int'l, Inc.*, 337 F.3d 421, 428 (4th Cir. 2003).

summary judgment show that there are genuine issues of material fact with respect to the issue of defendants' intent. Therefore, defendants' motion for summary judgment, Filing No. 74, is denied as to plaintiffs' claims under ERISA § 510.

Having found that plaintiffs met their burden of establishing a prima facie case under § 510, the court turns to the second step of the *McDonnell Douglas* framework. Defendants argue that a legitimate, nondiscriminatory reason exists for terminating plaintiffs' employment: plaintiffs' alleged insubordination, undermining of Brentwood Dental's policies and benefit systems, and plaintiffs' effect on employee morale. Filing No. 75. Defendants claim that Brentwood Dental had a procedure in place for employment-related complaint resolution, as well as reasonable, nondiscriminatory prohibitions against certain types of misconduct which would undermine the workplace. *Id*. Accordingly, the court finds that defendants satisfied the second step of the *McDonnell Douglas* framework. Filing No. 75.

Defendants contend that at the pretext stage of the *McDonnell Douglas* framework, no evidence exists refuting defendants' lawful justification for terminating plaintiffs' employment. Filing No. 75. Plaintiffs maintain that defendants' explanation for terminating plaintiffs demonstrates pretext because the employee handbook and the policies within it had not yet been implemented. *Id*. Furthermore, plaintiffs argue that defendants' reason for terminating plaintiffs' employment differs from defendants' reasons advanced before the NEOC; namely, that defendants allegedly told the NEOC that it terminated plaintiffs' employment for complaining about plaintiffs' compensation package. *Id*. Plaintiffs refer to defendant Obeng's statement that he could not keep plaintiffs employed if they continued to disparage benefits, and Larson's statement that she believed the IRA issues

13

were a motivating factor behind plaintiffs' termination. *Id*. This evidence, plaintiffs claim, creates a genuine issue of material fact regarding defendants' specific intent to interfere with plaintiffs' continued enrollment in the Plan. *Id*. Therefore, in this final step of the analysis, the court finds a factual issue remains concerning whether plaintiff established pretext. Accordingly, defendants' motion for summary judgment on plaintiff's hostile work environment claims (Counts III, IV, and part of V) is denied.

### Claims II & V

Defendants request that this court grant summary judgment on the following issues: whether Obeng breached a fiduciary duty related to the Plan and whether such breach is actionable, and whether Brentwood Dental improperly administered the Plan and whether such behavior is actionable. Filing No. 74. Defendants argue that plaintiffs have failed to disclose the nature and amount of lost wages, Plan losses, and other damages. *Id*. In response to plaintiffs' allegations that defendants profited from withholding Plan deposits, defendants maintain such statements are not supported by the evidence. Filing No. 96. Defendants contend that plaintiffs have failed to produce evidence "demonstrating that (1) either defendant profited, or (2) the Plan suffered loss from the breach(es)." Filing No. 96. Defendants further state the only relief available to plaintiffs under ERISA §§ 409 and 502 is equitable relief, and because plaintiffs' claims for lost wages, compensatory damages, money damages, and other damages are not equitable, those damages should be summarily denied. Filing No. 75. Defendants conclude that they are entitled to summary judgment because there is no issue of material fact that plaintiffs "were made whole long before the filing of their lawsuit." *Id*. Defendants refer to the DOL's determination that corrective action had been taken when defendants made additional deposits to the Plan,

14

and argue that the doctrine of collateral estoppel bars further review before this court. Filing No. 88.

Plaintiffs in turn, request that this court grant partial summary judgment on the following issues: that defendants breached their fiduciary duties by withholding Plan funds and converting funds for their own use, and that defendants breached their fiduciary duties by failing to adhere to Plan documents regarding fund deposits. Filing No. 82. Plaintiffs maintain that whether plaintiffs have suffered loss due to the alleged breach remains an issue for trial. Id.

Plaintiffs agree that equitable relief may be awarded for plaintiffs' claims and that benefits recovered are payable to the Plan.[4] Filing No. 84. See Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 140 (1985). Plaintiffs note that included in their prayer for relief is their request to be reinstated as participants to the Plan, and that Obeng restore to the Plan any profits made from his use of Plan assets. Filing No. 84. Plaintiffs disagree that they were "made whole" before filing their lawsuit. Id. Rather, plaintiffs contend that defendants withheld plaintiffs' wages for defendants' use, and consequently, plaintiffs suffered damages and the Plan suffered losses. Filing No. 84. Plaintiffs allege that while defendants made untimely deposits to the Plan, defendants used the money to pay old debts, provide a "pay draw" to a non-employee, and subsidize Obeng's family vacations. Filing Nos. 84, 82. As part of the equitable remedies plaintiffs seek, plaintiffs argue that

---

[4]Plaintiffs' state: "Under 29 U.S.C. § 1102(a)(2), benefits recovered in an action are paid to the Plan and not to the participants or beneficiaries." Plaintiffs' then cite to Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 135 (1985), for this proposition. For purposes of clarifying the law in this area, 29 U.S.C. § 1102(a)(2) defines the term "named fiduciary," and does not speak toward benefits. However, citation to Mass. Mut. Life Ins. Co. is proper.

15

defendants should be required to pay to the Plan the interest required under DOL regulations. Filing No. 84.

Plaintiffs agree that they have not specified their amount of damages because defendants are unable to locate the documents plaintiffs need to calculate their losses. Filing No. 84. Specifically, plaintiffs refer to documents regarding the building and remodeling of the office locations, as well as payroll records. *Id*. Plaintiffs request additional time to obtain the necessary information, as an order to compel this information through discovery from defendants would be inadequate as defendants have not retained such documents. *Id*.[5]

Accepting the facts in the light most favorable to the nonmoving party, the court finds that a genuine issue of material fact exists concerning plaintiffs' claims under §§ 502 and 409. Whether Obeng breached his Plan fiduciary duties and whether defendants improperly administered the Plan are factual determinations that remain an issue for trial.

The court notes that plaintiffs have prayed for both equitable and monetary damages. ERISA §§ 409 and 502 contemplate equitable relief and require a fiduciary "to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary[.]" 29 U.S.C. § 1109 (2006). Evidence regarding whether defendants profited from untimely Plan deposits and whether the Plan and plaintiffs suffered damages remains disputed. The lack of plaintiffs' evidence demonstrating damages and plaintiffs' request for additional time to find such evidence causes the court concern, and the court will not reopen discovery. The court orders the

---

[5]Plaintiffs did not file a motion; rather, plaintiffs make their request for additional time to obtain this information in a paragraph at the end of their brief in opposition to defendants' motion for summary judgment. Filing No. 84.

16

parties to include in their trial briefs, due December 18, 2006, the amounts of damages, if known, specifying both the nature, either equitable or monetary, sought for each claim, and the legal authority for awarding or denying such request.

### Plaintiffs' Motion in Limine

Plaintiffs filed a motion in limine requesting that this court exclude from evidence various documents that pertain to both plaintiffs, the NEOC, and Brentwood Dental's Employee Handbook and staff review of policies and procedures. Filing No. 101. Plaintiffs argue the listed documents are irrelevant, constitute inadmissible hearsay, and have not been properly authenticated or identified. Filing No. 102. The court finds that plaintiffs' dispute with the admission of such evidence has been somewhat resolved at the pretrial conference, and those remaining concerns are more appropriately the subject of evidentiary objections to be dealt with at trial. As such, the court denies plaintiffs' motion in limine without prejudice to reassertion at trial.

ACCORDINGLY, IT IS ORDERED:

1. Defendants' motion for summary judgment, Filing No. 74, is denied.

2. Plaintiffs' motion for partial summary judgment, Filing No. 80, is denied.

3. Plaintiffs' motion in limine, Filing No. 101, is denied without prejudice to reassertion at trial.

4. Plaintiffs' claims remain issues for trial (Claims I, II, III, IV, V).

5. Both parties shall include in their trial briefs, due December 18, 2006, specific allegations of damages as to each claim, noting the nature of the relief sought and the statutory authority supporting the award or denial of such requests.

DATED this 7th day of December, 2006.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge