IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LISA McKNIGHT and JANEIL THOMPSON, <br><br>  Plaintiffs, <br><br> vs. <br><br> BRENTWOOD DENTAL GROUP, INC., a Nebraska Corporation, and Dr. MICHAEL OBENG, in his individual capacity, <br><br>  Defendants. | 8:04CV642 <br><br> MEMORANDUM AND ORDER |

This matter is before the court following a non-jury trial. Plaintiffs Lisa McKnight and Janeil Thompson (collectively, "plaintiffs") filed this lawsuit alleging interference with protected rights in violation of 29 U.S.C. § 1140 (Claim I); breach of fiduciary duty in violation of 29 U.S.C. § 1109 (Claim II); whistle-blower retaliation in violation of 29 U.S.C. § 1140 (Claim III); wrongful termination of participation in the benefit plan in violation of 29 U.S.C. § 1140 (Claim IV); and improper administration of the benefit plan (Count V). Filing No. 33. Plaintiffs' claims I, III, and IV are brought pursuant to ERISA[1] § 510 (29 U.S.C. § 1140); claim II is brought under ERISA § 409 (29 U.S.C. § 1109); and claim V is brought pursuant to ERISA § 502 (29 U.S.C. § 1132).

Also at issue is defendants' motion to dismiss or exclude evidence, Filing No. 116, and plaintiffs' motion to exclude evidence, Filing No. 121, both of which the court agreed to take under advisement at trial. Based on the evidence and testimony presented to the

---

[1]Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*

court in this case and pursuant to Federal Rule of Civil Procedure 52, the court makes the following findings of fact and conclusions of law.

**Findings of Fact**

Brentwood Dental Group, Inc. ("Brentwood Dental"), a Nebraska corporation licensed to do business in the state of Nebraska, at one time included three dental offices located in La Vista, Bellevue, and Omaha, as well as an emergency dental clinic located in Omaha. Dr. Michael Obeng ("Obeng") served as President and Director of Brentwood Dental. Brentwood Dental employed plaintiffs Lisa McKnight ("McKnight") and Janeil Thompson ("Thompson"). After receiving a promotion in January 1998, McKnight began working as Office Manager of all Brentwood's office locations. Thompson initially worked at the La Vista office, supervised by McKnight, and then moved to the Bellevue office where she worked with Dr. Fung. Plaintiffs were at-will employees, and were not subject to any employee contract arrangement.

Brentwood Dental provided its employees with a benefit plan defined under ERISA as in the form of a Simple IRA ("the Plan"). Under the terms of the Plan, Brentwood Dental agreed to provide a matching contribution equal to a participating employee's salary reduction contribution, up to a limit of three percent of the employee's compensation for the calendar year. McKnight and Thompson both participated in the Plan, and Obeng served as fiduciary of the Plan.

In January 2003, McKnight questioned Obeng about a discrepancy between her paycheck deductions for the Plan and the amount appearing in her Plan account. McKnight requested a private meeting to include herself, her husband, and Obeng, to discuss the missing deposits. On January 16, 2003, Obeng handed McKnight a sealed

Federal Express envelope addressed to the Plan. The envelope contained withholding and employer contribution deposits for all of the Plan IRAs; both McKnight's and Thompson's IRA accounts reflect deposits made on January 17, 2003.

Obeng held weekly staff meetings at each Brentwood dental office to discuss office issues and address any staff concerns. Melissa Larson ("Larson"), practice administrator for Brentwood Dental, conducted a staff meeting at the La Vista office on March 4, 2003, while Obeng was away on vacation. At this meeting, plaintiffs raised concerns about benefits, including the bonus system, as well as the untimely Plan deposits. Larson testified at trial that she felt disrespected at this meeting because the Plan concerns were not raised prior to the meeting and Larson had no chance to prepare.

Prior to Obeng's return from vacation, Larson informed Obeng that the La Vista March 4th staff meeting had been "heated" and that concerns had been raised regarding the Plan. Obeng told Larson he would deal with the situation when he returned. Obeng returned from vacation on March 10, 2003, and further discussed the staff meeting with Larson. Larson expressed concern that McKnight and Thompson had raised their issues in an inappropriate manner and that she thought discipline was necessary.

On March 11, 2003, Obeng met with plaintiffs and expressed his concern about the way plaintiffs handled their issues at the staff meeting. Obeng stated he felt the plaintiffs were ungrateful and unhappy, and that the plaintiffs' attitudes affected the staff. The Plan was not discussed at this meeting and the plaintiffs expressed their desire to continue with their employment. Obeng sent plaintiffs home for the remainder of the day. After sending the plaintiffs home, Obeng met with the other staff members present at the March 4th La Vista staff meeting. Obeng asked the group about the staff meeting, and the staff

confirmed Larson's version of the meeting, although the staff's criticism of the plaintiffs was not as sharp as Larson's. Obeng then consulted with Brentwood Dental's contracted human resource advisors to discuss disciplinary action.

On March 12, 2003, McKnight and Thompson arrived at work to find notes that told them not to touch anything. Obeng arrived at the office and informed Larson that he decided to fire both McKnight and Thompson. With Larson present, Obeng met with McKnight and Thompson separately, terminated McKnight, and accepted Thompson's resignation in lieu of termination. Following their termination, Thompson and McKnight applied for and received unemployment benefits.

On April 2 and 9, and June 20, 2003, Thompson called the U.S. Department of Labor ("DOL") concerning the untimely deposits to the Plan. The DOL investigated Thompson's complaint and conducted an audit of the Plan. On September 12, 2003, additional deposits were made to all IRA accounts, including accounts belonging to Thompson and McKnight. In November, the DOL issued a finding that Brentwood had breached its fiduciary duty by failing to timely deposit the withholdings. The DOL did not impose any fines, because Brentwood had paid additional sums into the Plan in September bringing the accounts current with all outstanding contributions. Brentwood thereafter terminated the Plan.

In November 2003, McKnight filed a charge of discrimination with the Nebraska Equal Opportunity Commission ("NEOC") and EEOC. Thompson also filed a charge of discrimination in December 2003. As to both plaintiffs' claims, the NEOC determined a sufficient nexus existed between plaintiffs' complaints of missing IRA funds and subsequent termination.

On April 14, 2003, Ms. McKnight became employed at Val Verde Dental, at which time she stopped drawing on unemployment benefits. In April 2003, Thompson and her husband started a cleaning business called JTT's Cleaning Service. Thompson remained on unemployment status until August of 2003, when Dr. Matt Bolamperti employed Thompson. Thompson worked with him for approximately fifteen months before she began working for Dr. Kate Huntsinger. McKnight and Thompson thereafter brought the lawsuit at issue and twice amended their complaint. Filing No. 33.

**Conclusions of Law**

Jurisdiction is proper under 28 U.S.C. § 1331, providing this court original jurisdiction over all civil actions arising under the Constitution and laws of the United States, and 29 U.S.C. § 1132(e), permitting this court jurisdiction in the district where the ERISA plan is administered, where the breach took place, or where a defendant resides or may be found.

**A.  INTERFERENCE, RETALIATION, & WRONGFUL TERMINATION
     ERISA § 510 (29 U.S.C. § 1140)**

ERISA § 510 prohibits an employer from, *inter alia*, discharging a participant in an ERISA plan for exercising any right to which the participant is entitled under the provisions of an employee benefit plan, or for the purpose of interfering with the participant's ERISA rights under the plan. 29 U.S.C. § 1140 (2007); *Fischer v. Andersen Corp.*, 483 F.3d 553 (8th Cir. 2007). "ERISA discrimination claims are analyzed under the three-stage framework used in Title VII and ADEA cases." *Rath v. Selection Research, Inc.*, 978 F.2d 1087, 1089 (8th Cir. 1992). The three-stage burden-shifting framework, known as the *McDonnell Douglas*[2] test, is not applicable at this juncture, because after all of the

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

5

evidence has been presented, the court's inquiry is on the ultimate issue of unlawful motive, rather than any particular step in the *McDonnell Douglas* paradigm. *Gilkerson v. Toastmaster, Inc.*, 770 F.2d 133, 135 (8th Cir. 1985) (affirming jury verdict in an ADEA case); *USPS Bd. of Governors v. Aikens*, 460 U.S. 711, 715-716 (1983) (at the close of the evidence, the district court should have proceeded to the specific question, "whether the defendant intentionally discriminated against the plaintiff," just as district courts decide disputed questions of fact in other civil litigation); 8TH CIR. CIVIL JURY INSTR. 5.01 comment (2007).

Comparatively, in Title VII cases, the Eighth Circuit adheres to the rule that a plaintiff prevails on the issue of liability if he or she shows that discrimination was a "motivating factor" in the challenged employment decision. 8TH CIR. CIVIL JURY INSTR. 5.01 comment (2007). "If a plaintiff prevails on the issue of liability by showing that discrimination was a 'motivating factor,' the defendant nevertheless may avoid an award of damages or reinstatement by showing that it would have taken the same action 'in the absence of the impermissible motivating factor.'" 8TH CIR. CIVIL JURY INSTR. 5.01A comment (2007). A plaintiff who prevails on the issue of liability will be eligible for a declaratory judgment and attorney fees, but the plaintiff may not recover actual or punitive damages if the defendant shows that it would have made the same employment decision irrespective of any discriminatory motivation. 8TH CIR. CIVIL JURY INSTR. 5.01 comment (2007).

Thus, to establish a prima facie case of ERISA retaliation, plaintiffs must prove that (1) they participated in a statutorily protected activity; (2) that an adverse employment action was taken against them; and (3) a causal connection existed between the two. *Rath*

6

*v. Selection Research, Inc.*, 978 F.2d 1087, 1090 (8th Cir. 1992). "The requisite causal connection may be proved circumstantially by proof that the discharge followed the protected activity so closely in time as to justify an inference of retaliatory motive." *Rath v. Selection Research, Inc.*, 978 F.2d 1087, 1090 (8th Cir. 1992); *Kinkead v. Southwestern Bell Tel. Co.*, 49 F.3d 454, 456 (8th Cir. 1995) ("A close temporal nexus between an exercise of rights and the termination of employment may give rise to a reasonable inference of retaliatory motive.").

Similarly, to prevail under their ERISA interference claim, the plaintiffs must show that (1) Brentwood Dental subjected them to an adverse employment action, (2) the plaintiffs were likely to receive future benefits, and (3) there was a causal connection between the adverse action and the likelihood of future benefits. *Fischer v. Andersen Corp.*, 483 F.3d 553 (8th Cir. 2007). Plaintiffs need not prove that their employer discharged them with the sole purpose of interfering with their employee's benefits; rather, it must be a motivating factor. *Shahid v. Ford Motor Co.*, 76 F.3d 1404, 1411 (6th Cir. 1996). Moreover, a litigant will not succeed on an ERISA cause of action "where the loss of benefits was a mere consequence of, but not a motivating factor behind, a termination of employment." *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 37 (1st Cir. 1995). "A factor is motivating if it can be said that it has 'a determinative influence on the outcome.'" *Koons v. Aventis Pharms., Inc.*, 367 F.3d 768, 777 (8th Cir. 2004).

Plaintiffs argue that they participated in statutorily protected activity under ERISA at the March 4, 2003, La Vista staff meeting when they questioned the procedures used to deposit the wage withholdings into the IRA accounts. Defendants argue that the plaintiffs' actions at the March 4, 2003, La Vista staff meeting did not constitute protected

7

activity within the meaning of ERISA, and that any mention of untimely deposits prior to the meeting is not causally connected to any employment action within the meaning of ERISA.

The Eighth Circuit has left open the question of whether § 510 protects informal complaints or protests relating to plan changes that a participant reasonably believes to be illegal. *Langlie v. Onan Corp.*, 192 F.3d 1137, 1141 (8th Cir. 1999). Here, the court finds it logical to infer that under ERISA, plaintiffs posses the right to inform plan fiduciaries and administrators of suspected violations of ERISA. *See McLean v. Carlson Cos.*, 777 F. Supp. 1480, 1484 (D. Minn. 1991). "The opposite conclusion would provide a strong incentive to plan participants to institute litigation without first attempting to resolve the issue informally." *McLean*, 777 F. Supp. at 1484.

The evidence shows that in January 2003, McKnight contacted Obeng about Plan withholding and contribution discrepancies and Obeng made a deposit to the Plan shortly thereafter. Further, the evidence demonstrates that among other complaints, plaintiffs voiced their concerns about Obeng's failure to make timely contributions to the Plan at the La Vista staff meeting. The court finds it irrelevant that such concerns were voiced to Larson, who in this case acted as an agent of Obeng, and subsequently relayed plaintiffs' concerns to Obeng. The court finds that under these circumstances, plaintiffs exercised a right provided to them under ERISA and engaged in a statutorily protected activity.

Under the next step of the § 510 inquiry, plaintiffs must demonstrate that they suffered an adverse employment action. Here, it is undisputed that plaintiffs suffered an adverse employment action: Obeng fired McKnight, and in lieu of firing Thompson, accepted her resignation. The next question is whether a causal connection exists between plaintiffs' untimely contribution complaints and their subsequent termination. The

8

plaintiffs' evidence of a causal connection is the relatively short time between their complaints about the untimely Plan deposits at the La Vista staff meeting on March 4, 2003, and their discharge on March 12, 2003. The court finds this close temporal nexus between plaintiffs' exercising their ERISA rights by questioning the deposits of their wage withholdings and employer contributions and their termination gives rise to a reasonable inference of retaliatory motive.

However, the evidence also shows that Obeng would have taken the same action absent the impermissible motivating factor, plaintiffs' Plan complaints. According to the evidence adduced at trial, many complaints were raised at the La Vista staff meeting including topics of health insurance, maternity leave, bonuses, and a lost uniform allowance. Testimony at trial indicated that while the Plan may have been raised as an issue, the heated La Vista meeting was mostly concerning benefits generally. Thus, while the IRA may have been a "motivating factor" leading to plaintiffs' termination, Obeng testified and the evidence supports a conclusion that Obeng would have terminated plaintiffs' for their insubordination regardless. Accordingly, plaintiffs prevail on the issue of liability, but defendants have proved by the greater weight of the evidence that Obeng would have discharged the plaintiffs regardless of their Plan complaint at the La Vista meeting.

As to plaintiffs' interference claim, the evidence shows that defendants did not terminate plaintiffs with the specific intent to interfere with plaintiffs' continued participation in the Plan. Rather, Obeng fired plaintiffs due to their insubordination and attitude demonstrated at the La Vista staff meeting. The court finds that plaintiffs have not demonstrated by a preponderance of the evidence that Obeng's intention to interfere with

9

Plan benefits was more likely what motivated his decision to fire the plaintiffs. Moreover, the evidence shows that plaintiffs' loss of Plan benefits is merely incidental to their termination. As such, the court finds that the evidence is insufficient to warrant a finding of liability under plaintiffs' claim of ERISA interference. Further, the court finds that pursuant to ERISA § 510 (29 U.S.C. § 1140), having established only liability for their retaliation claim, the court finds that plaintiffs are not entitled to damages or relief sought, but are entitled to declaratory judgment and, if requested, attorney fees.

**B. BREACH OF FIDUCIARY DUTY & IMPROPER ADMINISTRATION
ERISA § 502 (29 U.S.C. § 1132) & ERISA § 409 (29 U.S.C. § 1109)**

Section 502(a) of ERISA, 29 U.S.C. § 1132(a)(2), the civil enforcement provision, governs claims to recover benefits or enforce rights under the terms of an ERISA plan. *Neumann v. AT&T Communs., Inc.*, 376 F.3d 773, 779 (8th Cir. 2004). ERISA § 409 provides that a fiduciary who breaches his or her responsibilities, obligations, or duties may be personally liable, but only for losses to the plan. 29 U.S.C. § 1109(a) (2007); *Roth v. Sawyer-Cleator Lumber Co.*, 61 F.3d 599, 602 (8th Cir. 1995). Thus, § 1109(a) [§ 409] provides relief only to the plan and not to individual beneficiaries. *Conley v. Pitney Bowes*, 176 F.3d 1044, 1047 (8th Cir. 1999). Courts apply a three-step test to determine whether a loss to the plan has occurred. *Roth*, 61 F.3d at 602. The first step of the analysis requires determining whether the events underlying the action have resulted in a "loss." *Id.* Second, assuming that a loss has occurred, courts determine whether the loss is to the plan or merely to the beneficiaries. *Id.* Lastly, the court must decide whether the alleged breach of trust resulted in the identified losses to the plan. *Id.* Ambiguities in determining the loss are resolved against the fiduciary accused of breaching his or her duties. *Id.*

10

Prior to trial, the court entered a memorandum and order denying the parties' respective summary judgment motions. Filing No. 106. In the court's order, the court noted that as to plaintiffs' §§ 409 and 502 claims, "[t]he lack of plaintiffs' evidence demonstrating damages and plaintiffs' request for additional time to find such evidence causes the court concern, and the court will not reopen discovery." *Id.* Plaintiffs had requested both equitable and monetary damages in their second amended complaint, so the court ordered the parties to specify in their trial briefs the amount of damages sought, specifying both the nature and amount sought for each claim, as well as the legal authority for awarding or denying such request. *Id.*

In their trial brief, plaintiffs allege that plaintiffs' counsel had recently been informed by defense counsel that Obeng had found a three-ring binder containing spreadsheets prepared by the DOL during its audit of the Plan, which listed the interest to be paid to each participant's account for the delayed deposits of employee contributions. Filing No. 112. Plaintiffs' counsel maintains that it did not receive copies of these documents until December 14, 2006, four days before submitting plaintiffs' trial brief, and therefore, did not have adequate time to determine whether all the monies due to the Plan were deposited. Filing No. 112. Based on these spreadsheets, plaintiffs' state in their trial brief that defendants may have paid the interest on the delayed deposits for the employee withholdings, and if so, the Plan would not have any losses with regard to the employee contributions. *Id.* However, plaintiffs contend that they "now question whether [d]efendants paid all required matching contributions." *Id.* Plaintiffs' argue in their trial brief that under the terms of the Plan, Brentwood was obligated to contribute a match of each participant's contribution, up to three percent of the participant's annual compensation, with

11

"compensation" defined by the Plan as "the sum of wages, tips, and other compensation from the Employer subject to federal income tax withholding." Plaintiffs' contend that bonuses fall under this definition and that some contributions may not have been paid to the Plan if bonuses were not calculated as part of each participant's annual compensation. Plaintiffs state in their trial brief that "[p]laintiffs will know at the first day of trial whether or not they have any claims for damages to the Plan or for themselves on their claims for breach of fiduciary duties and improper administration of the Plan."

Defendants thereafter filed the motion to dismiss or exclude evidence at issue, Filing No. 116, requesting that the court exclude at trial any evidence concerning damages not disclosed prior to the pretrial hearing. Filing No. 117. Plaintiffs then filed a motion to exclude evidence that defendants intended to assert at trial that consisted of documents concerning Paula Kadlec, Brentwood Dental's former CFO. Filing No. 121. Such documents allegedly contained correspondence and calculations related to the DOL's investigation and audit. Plaintiffs argued that these newly discovered documents should have been made part of defendants' Rule 26 disclosures, and due to the late notice, plaintiffs had no opportunity to depose Paula Kadlec. Filing No. 122. Plaintiffs also took issue with the DOL's interest calculations, but stipulated that defendants paid $78.02 in statutory interest for the delayed deposits of employee wage withholdings. *Id.* The court took both motions under advisement until the time of trial.

At trial, the evidence proved and the parties have stipulated that Obeng failed to make timely employee salary reduction contribution deposits to the IRAs under the Plan. The evidence shows that due in part to the DOL investigation and audit, all lost earnings attributable to delays in depositing wage withholdings were paid by Brentwood on

12

September 12, 2003. Plaintiffs contend that outstanding interest is still due on the late deposits. According to plaintiffs' counsel's computation, $133.90 for the whole plan remains outstanding. However, at trial, demonstrative exhibits were the only evidence offered to support this contention and consisted of plaintiffs' counsel's calculations based on analyzing various other exhibits. Notably, no accountant or DOL investigator was called to testify at trial.

The court finds that as to plaintiffs' breach of fiduciary and improper administration claims, there has been a failure of proof. Based on the evidence submitted, the court is unable to cross the first threshold question of whether a loss has occurred, whether this loss is to the Plan or the beneficiaries, and whether Obeng's failure to make timely deposits caused identified losses to the Plan. The DOL concluded that Obeng had not made timely deposits and declined to pursue further action after Obeng corrected Plan deficiencies. The court finds that demonstrative exhibits reporting an alleged discrepancy amount of $133.90 for the entire Plan is speculative and, at best, pure conjecture. Plaintiffs have failed to carry their burden and establish damages as it relates to Obeng's untimely deposits to the Plan. As such, the court grants defendants' motion to dismiss these claims and denies as moot plaintiffs' motion.

**Disposition**

IT IS ORDERED based upon the foregoing Findings of Fact and Conclusions of Law, the court finds that:

1. Plaintiffs McKnight and Thompson have established liability for their retaliation claim and are thus entitled to declaratory relief (Claims III, IV);
2. Plaintiffs may motion the court for attorney fees;

3. Defendants' motion to dismiss or exclude evidence, Filing No. 116, is granted as to plaintiffs' Claims II and V, and must be denied as to all other claims;

4. Plaintiffs' motion to exclude evidence, Filing No. 121, is denied as moot;

5. A separate judgment will be entered in conjunction with this Memorandum and Order.

DATED this 17th day of July, 2007.

BY THE COURT:


s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
United States District Judge